IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
No. 7:20-CV-71-D

KARL KENDALL, SUZANNE RAINEY,　)
and VINCENZO PERNICE,　)
　)
Plaintiffs,　)
　)
v.　)　**ORDER**
　)
PHARMACEUTICAL PRODUCT　)
DEVELOPMENT, LLC, et al.,　)
　)
Defendants.　)

On April 15, 2020, Karl Kendall, Suzanne Rainey, and Vincenzo Pernice (collectively, "plaintiffs") filed a complaint against Pharmaceutical Product Development, LLC ("PPD"), the Board of Directors of PPD (the "Board"), the Benefits Administrative Committee (the "Committee"), and John Does 1–30 (collectively, "defendants") [D.E. 1]. Plaintiffs allege that the Committee breached its fiduciary duties of loyalty and prudence under section 404(a) of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1104(a) (count one), and that PPD and the Board breached their duty to monitor the Committee (count two). See id. On July 31, 2020, pursuant to Federal Rules of Civil Procedure 12(b)(1) and (b)(6), defendants moved to dismiss the complaint [D.E. 19], and filed a memorandum in support [D.E. 20]. On August 21, 2020, plaintiffs responded in opposition [D.E. 21]. On September 4, 2020, defendants replied [D.E. 22]. As explained below, the court grants in part and denies in part defendants' motion to dismiss, dismisses a portion of the claims, and dismisses plaintiffs' request for injunctive relief.

# I.

This putative class action concerns defendants' selection and maintenance of investment options in the PPD Retirement Savings Plan (the "Plan"). See Compl. [D.E. 1]. PPD is a leading global contract research organization and pharmaceutical product development company based in Wilmington, North Carolina. See id. ¶¶ 18–19. PPD sponsors the Plan—a defined contribution, individual account plan under ERISA § 3(34), 29 U.S.C. § 1002(34)—for eligible employees. See id. ¶¶ 18, 33–35. Employees make pre- and post- tax contributions to individual accounts, and PPD makes matching contributions. See id. ¶¶ 33–41. Between 2014 and 2020 (the "Class Period"), the Plan offered participants various investment options. See id. ¶ 43.

PPD is the named fiduciary responsible for administering the Plan. See id. ¶¶ 20–24. PPD, acting through the Board, delegated fiduciary responsibilities for selection and retention of the Plan's investment options to the Committee. See id. ¶¶ 25–31. The Plan's recordkeeper is Massachusetts Mutual Life Insurance Company ("Mass Mutual"). See id. ¶ 113. Recordkeeping consists of administrative tasks including claims processing, loan processing, disclosures, participant education, and other consulting services. See id.

Plaintiffs are former employees of PPD who allege they participated in the Plan during the Class Period. See id. ¶¶ 13–15. Plaintiffs admit that they lack knowledge of defendants' decisionmaking process with respect to the Plan. See id. ¶ 17. Nonetheless, plaintiffs allege that defendants "failed to have a proper system of review in place to ensure that participants in the Plan were being charged appropriate and reasonable fees for the Plan's investment options." Id. ¶ 63. Plaintiffs also allege that defendants failed to leverage the size of the Plan to negotiate for lower expense ratios for certain investment options maintained or added to the Plan during the Class Period and lower recordkeeping and administrative fees. See id. Pursuant to ERISA sections 409 and 502,

2

29 U.S.C. §§ 1109 and 1132, plaintiffs bring a class action on behalf of all participants and beneficiaries of the Plan during the Class Period against defendants in their fiduciary capacities. See id. ¶¶ 1, 47–53.

Plaintiffs allege that the Committee breached its fiduciary duties in failing to investigate and select lower cost alternative funds including (1) lower fee share classes, (2) separate accounts or collective trusts as alternatives to mutual funds, and (3) passively-managed funds over actively-managed funds. See id. ¶¶ 76–112. Plaintiffs also allege that the Committee breached its fiduciary duties in failing to monitor recordkeeping fees. See id. ¶¶ 113–31, 135. Count one alleges that the Committee breached its fiduciary duties of loyalty and prudence under ERISA § 404(a), 29 U.S.C. § 1104(a). See id. ¶¶ 132–38. Count two alleges that PPD and the Board breached their derivative duty to monitor the Committee. See id. ¶¶ 139–45. Plaintiffs seek, among other things, monetary and injunctive relief.

A motion to dismiss under Rule 12(b)(6) tests the complaint's legal and factual sufficiency. See Ashcroft v. Iqbal, 556 U.S. 662, 677–80 (2009); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 554–63 (2007); Coleman v. Md. Court of Appeals, 626 F.3d 187, 190 (4th Cir. 2010), aff'd, 566 U.S. 30 (2012); Giarratano v. Johnson, 521 F.3d 298, 302 (4th Cir. 2008). To withstand a Rule 12(b)(6) motion, a pleading "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Iqbal, 556 U.S. at 678 (quotation omitted); see Twombly, 550 U.S. at 570; Giarratano, 521 F.3d at 302. In considering the motion, the court must construe the facts and reasonable inferences "in the light most favorable to [the nonmoving party]." Massey v. Ojaniit, 759 F.3d 343, 352 (4th Cir. 2014) (quotation omitted); see Clatterbuck v. City of Charlottesville, 708 F.3d 549, 557 (4th Cir. 2013), abrogated on other grounds by Reed v. Town of Gilbert, 576 U.S. 155 (2015). A court need not accept as true a complaint's legal conclusions,

3

"unwarranted inferences, unreasonable conclusions, or arguments." Giarratano, 521 F.3d at 302 (quotation omitted); see Iqbal, 556 U.S. at 678–79. Rather, a plaintiff's factual allegations must "nudge[] [his] claims," Twombly, 550 U.S. at 570, beyond the realm of "mere possibility" into "plausibility." Iqbal, 556 U.S. at 678–79.

When evaluating a motion to dismiss, a court considers the pleadings and any materials "attached or incorporated into the complaint." E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc., 637 F.3d 435, 448 (4th Cir. 2011); see Fed. R. Civ. P. 10(c); Goines v. Valley Cmty. Servs. Bd., 822 F.3d 159, 165–66 (4th Cir. 2016); Thompson v. Greene, 427 F.3d 263, 268 (4th Cir. 2005). A court also may consider a document submitted by a moving party if it is "integral to the complaint and there is no dispute about the document's authenticity" without converting the motion into one for summary judgment. Goines, 822 F.3d at 166. "[I]n the event of conflict between the bare allegations of the complaint and any exhibit attached . . . , the exhibit prevails." Id. (quotation omitted); see Fayetteville Invs. v. Com. Builders, Inc., 936 F.2d 1462, 1465 (4th Cir. 1991). Additionally, a court may take judicial notice of public records. See, e.g., Fed. R. Evid. 201; Tellabs, Inc. v. Makor Issues & Rts., Ltd., 551 U.S. 308, 322 (2007); Philips v. Pitt Cnty. Mem'l Hosp., 572 F.3d 176, 180 (4th Cir. 2009).

## II.

In count one, plaintiffs allege that the Committee breached its duty of prudence by failing to investigate and select lower cost alternative funds. See Compl. [D.E. 1] ¶¶ 76–112, 135. ERISA seeks to protect beneficiaries of employee benefit plans. See Pension Benefit. Guar. Corp. ex rel. St. Vincent Cath. Med. Ctrs. Ret. Plan v. Morgan Stanley Inv. Mgmt. Inc., 712 F.3d 705, 715 (2d Cir. 2013); DiFelice v. U.S. Airways, Inc., 497 F.3d 410, 417 (4th Cir. 2007). Thus, "[a]n ERISA fiduciary must act with the care, skill, prudence, and diligence that a prudent person acting in a like

4

capacity and familiar with such matters would use." Tibble v. Edison Int'l, 575 U.S. 523, 523 (2015) (quoting 29 U.S.C. § 1104(a)(1)); see Fifth Third Bancorp v. Dudenhoeffer, 573 U.S. 409, 419 (2014). The fiduciary duty of prudence "derive[s] from the common law of trusts." Tibble, 575 U.S. at 523 (quotation omitted); Cent. States, Se. & Sw. Areas Pension Fund v. Cent. Transp., Inc., 472 U.S. 559, 570 (1985); see Sweda v. Univ. of Penn., 923 F.3d 320, 327 (3d Cir. 2019); St. Vincent, 712 F.3d at 716.

Under the duty of prudence, an ERISA fiduciary must consider "those facts and circumstances that, given the scope of such fiduciary's investment duties, the fiduciary knows or should know are relevant to the particular investment or investment course of action involved." 29 C.F.R. § 2550.404a-1(b)(1)(i); see Stegemann v. Gannett Co., 970 F.3d 465, 473 (4th Cir. 2020). Fiduciaries also must investigate and review options for an ERISA plan's assets, considering not only "the merits of a transaction, but also . . . the thoroughness of the investigation into the merits of that transaction." Stegemann, 970 F.3d at 474 (alterations and quotations omitted); DiFelice, 497 F.3d at 418. An adequate investigation of existing investments considers whether any of the plan's investments are "improvident" or if a "superior alternative investment" exists. St. Vincent, 712 F.3d at 718–19; see Tibble, 575 U.S. at 523; Stegemann, 970 F.3d at 473 & n.7; Sweda, 923 F.3d at 328. Moreover, a fiduciary must account for changed circumstances that increase risk of loss. See St. Vincent, 712 F.3d at 717.

A fiduciary breaches its duty of prudence when it "fail[s] to properly monitor investments and remove imprudent ones." Tibble, 575 U.S. at 523. The elements of an ERISA breach of fiduciary duty claim are "(1) a plan fiduciary (2) breaches an ERISA-imposed duty (3) causing a loss to the plan." Sweda, 923 F.3d at 328; see Meiners v. Wells Fargo & Co., 898 F.3d 820, 822 (8th Cir. 2018). For purposes of their motion to dismiss, defendants do not contest the first and third

5

elements. Thus, the court considers whether plaintiffs have plausibly alleged that the Committee breached its fiduciary duties of loyalty and prudence.

## A.

In determining whether a fiduciary has acted prudently, a court examines the fiduciary's conduct "under the circumstances then prevailing." 29 U.S.C. § 1104(a)(1)(B); see Dudenhoeffer, 573 U.S. at 415; Tatum v. RJR Pension Inv. Comm., 761 F.3d 346, 358 (4th Cir. 2014); St. Vincent, 712 F.3d at 716. Courts do not measure a fiduciary's prudence using 20/20 hindsight. See Tatum, 761 F.3d at 369; St. Vincent, 712 F.3d at 716 ("We cannot rely, after the fact, on the magnitude of the decrease in the relevant investment's price; rather, we must consider the extent to which plan fiduciaries at a given point in time reasonably could have predicted the outcome that followed.") (alterations, citation, and quotations omitted); DiFelice, 497 F.3d at 424. The inquiry must be "context specific." Dudenhoeffer, 573 U.S. at 425.

In evaluating prudence, "a court must ask whether the fiduciary engaged in a reasoned decisionmaking process" consistent with a "prudent man" acting in a like capacity. DiFelice, 497 F.3d at 420; see Pfeil v. State St. Bank & Tr. Co., 806 F.3d 377, 384 (6th Cir. 2015); Tatum, 761 F.3d at 358. Such process considers "the appropriate methods to investigate the merits of the investment and to structure the investment." Pfeil, 806 F.3d at 384. A fiduciary "may breach his duties . . . by failing to investigate and evaluate the merits of his investment decisions." DiFelice, 497 F.3d at 410 (citation and quotation omitted). The appropriate inquiry focuses on the process that the fiduciary used to make the challenged decision, not the results of the decision. See Tussey v. ABB, Inc., 746 F.3d 327, 335 (8th Cir. 2014); St. Vincent, 712 F.3d at 716 (fiduciary duties require "prudence, not prescience") (quotation omitted). A fiduciary can discharge procedural prudence through actions including, for example, "appointing an independent fiduciary, seeking outside legal

6

and financial expertise, holding meetings to ensure fiduciary oversight of the investment decision, and continuing to monitor and receive regular updates on the investment's performance." Tatum, 761 F.3d at 358.

Defendants argue that in order to state a plausible claim for breach of the duty of prudence, plaintiffs must plausibly allege facts demonstrating that the Committee followed a flawed process for selecting the Plan's investment options. See [D.E. 20] 14–17. Defendants contend that plaintiffs' inferences based on hindsight cannot sustain their claims of a breach of the duty of prudence. See id. at 15. Rather, according to defendants, plaintiffs must (but have failed to) plausibly allege facts about the Committee's process. See id. at 17.

Plaintiffs respond that they have pleaded sufficient facts to support a plausible claim for breach of the duty of prudence. See [D.E. 21] 14–19. Plaintiffs argue that ERISA claims do not require specific factual allegations about the process at the pleadings stage, but rather permit circumstantial evidence of a breach of the duty of prudence. See Braden v. Wal-Mart Stores, Inc., 588 F.3d 585, 598 (8th Cir. 2009). Plaintiffs contend that the facts they cite in their complaint create a reasonable inference that the Committee breached the duty of prudence in various ways. See [D.E. 21] 17.

A plaintiff alleging a breach of the duty of prudence must allege facts that permit the court to reasonably "infer from what is alleged that the process was flawed." Braden, 588 F.3d at 596; see St. Vincent, 712 F.3d at 718; Renfro v. Unisys Corp., 671 F.3d 314, 327–28 (3d Cir. 2011); White v. Chevron Corp., No. 16-cv-0793-PJH, 2016 WL 4502808, at *7–8 (N.D. Cal. Aug. 29, 2016) (unpublished). A plaintiff "must plausibly allege action that was objectively unreasonable." Divane v. Nw. Univ., 953 F.3d 980, 988 (7th Cir. 2020); Amgen Inc. v. Harris, 136 S. Ct. 758, 760 (2016) (per curiam). Moreover, "[a]n inference pressed by the plaintiff is not plausible if the facts he points

7

to are precisely the result one would expect from lawful conduct in which the defendant is known to have engaged." Braden, 588 F.3d at 597. To show an inference that a prudent fiduciary in like circumstances would have made a different decision, plaintiffs must provide a "meaningful benchmark" against which to base a comparison. Meiners, 898 F.3d at 822.

Twombly and Iqbal's plausibility standard applies to ERISA fiduciary breach claims. See Stegemann, 970 F.3d at 468, 473; Moon v. BWX Techs., Inc., 577 F. App'x 224, 228 (4th Cir. 2014) (per curiam) (unpublished). A court cannot accept conclusory allegations "lest a plaintiff with a largely groundless claim be allowed to take up the time of a number of other people, with the right to do so representing an in terrorem increment of the settlement value." Twombly, 550 U.S. at 558; see Divane, 953 F.3d at 988; St. Vincent, 712 F.3d at 719; Intravaia v. Nat'l Rural Elec. Coop. Ass'n, No. 1:19-cv-973, 2020 WL 58276, at *1 n.1 (E.D. Va. Jan. 2, 2020) (unpublished); Reetz v. Lowe's Cos., No. 5:18-CV-00075-KDB-DCK, 2019 WL 4233616, at *3 (W.D.N.C. Sept. 6, 2019) (unpublished).

"ERISA plaintiffs claiming a breach of fiduciary duty have a challenging pleading burden because of their different levels of knowledge regarding what investment choices a plan fiduciary made as compared to how a plan fiduciary made those choices." Meiners, 898 F.3d at 822. "The critical inquiry, then, is whether the missing factual allegations are facts about the funds themselves, which ERISA plaintiffs can research, or facts about the fiduciary's internal processes, which ERISA plaintiffs generally lack." Id. at 822–23; see St. Vincent, 712 F.3d at 720 ("Armed with [] extensive data about a fiduciary's investment decisions, a prospective plaintiff must show, through reasonable inferences from well-pleaded facts, that the fiduciary's choices did not meet ERISA's requirements."). The court evaluates the contested investments and processes in relation to the whole retirement plan. See Renfro, 671 F.3d at 327. A plaintiff must plausibly allege that a

8

"prudent fiduciary in like circumstances would have acted differently." <u>St. Vincent</u>, 712 F.3d at 720; see <u>Stegemann</u>, 970 F.3d at 474–84; <u>Divane</u>, 953 F.3d at 988; <u>Meiners</u>, 898 F.3d at 822.

**B.**

Defendants contend that the Plan's Summary Plan Description ("SPD") and Investment Policy Statement ("IPS") cited in the complaint contradict plaintiffs' allegations of a flawed investment process. <u>See</u> [D.E. 20] 17–20. The IPS provides guidance to the Committee concerning investments, which defendants argue evinces a prudent system of review. <u>See</u> <u>Wildman v. Am. Century Servs., LLC</u>, 362 F. Supp. 3d 685, 693–95 (W.D. Mo. 2019); <u>Sacerdote v. N.Y. Univ.</u> ("<u>Sacerdote II</u>"), 328 F. Supp. 3d 273, 290 & n.34 (S.D.N.Y. 2018). Specifically, the IPS provides "meaningful direction" to the Committee and its "designated Investment Consultant/Advisor" in managing the Plan's investment options. <u>See</u> [D.E. 20-2] 4. The IPS describes that the Plan offers participants a "core set of reasonably priced investment options with different risk and return characteristics, which, when combined, will allow for the construction of a portfolio intended to match most participants' unique retirement investment objective." <u>Id.</u> The IPS states that the Plan's investment menu shall include a mix of investment options, including, capital preservation, fixed income, asset allocation, domestic equity, international equity, and specialty. <u>See</u> <u>id.</u> at 6. The IPS then extensively describes investment selection, the roles and responsibilities of the Plan's Investment Consultant/Advisor, and replacement of selected investment options. <u>See</u> <u>id.</u> at 6–8. Defendants also argue that using CapTrust as an investment advisor further undermines plaintiffs' allegations of a flawed fiduciary process. <u>See</u> <u>Cunningham v. Cornell Univ.</u>, No. 16-CV-6525 (PKC), 2019 WL 4735876, at *13 (S.D.N.Y. Sept. 27, 2019) (unpublished); <u>Riley v. Murdock</u>, 890 F. Supp. 444, 458 (E.D.N.C. 1995).

In opposition, plaintiffs argue that the IPS is insufficient to show prudence absent evidence

9

that defendants adhered to the IPS. See [D.E. 21] 19–21. Plaintiffs also argue that both the IPS and the employment of CapTrust create questions inappropriate to resolve on a motion to dismiss. See id. at 20.

The IPS and use of CapTrust are not dispositive, but are informative. With the IPS, plaintiffs could research whether the Committee complied with the IPS and plausibly allege facts to support the conclusion that the Committee did not do so and thereby breached its duty of prudence. Merely alleging facts "consistent" with a breach does not alone permit a reasonable inference that the Committee breached its fiduciary duty. See, e.g., McCleary-Evans v. Md. Dep't of Transp., 780 F.3d 582, 586–88 (4th Cir. 2015). The same principle holds true concerning CapTrust. See id.

1.

Turning to the specifics, plaintiffs allege that the Committee maintained several investment fund options that a reasonable fiduciary would have recognized as imprudent due to their high costs. See Compl. [D.E. 1] ¶ 79. Plaintiffs contend that the majority of funds (more than 60%) in the Plan were "much more expensive than comparable funds found in similarly sized plans" (defined as plans having between $500 million and $1 billion in assets). Id. ¶ 81. In support, plaintiffs provide a chart comparing the expense ratios of investment options in 2018 to the median expense ratios in the same investment category for the year 2015, with some expense ratios being as much as 127% above the category median. See id. Plaintiffs assert that the chart understates the excessiveness of the fees because the median ratios would have been higher in 2015 than in 2018. See id. ¶¶ 82–83. Plaintiffs also allege imprudence in the Committee's general failure to change the fund options since 2014. See id. ¶ 81.

Defendants respond that plaintiffs fail to provide a "meaningful benchmark" to allege that the Committee maintained imprudently expensive investment options. See [D.E. 20] 21–23.

10

Expense ratios vary within a given investment category; therefore, comparisons to broad investment categories are not a meaningful benchmark. See id. at 22. Moreover, defendants argue that the expense ratios listed for the Plan options are reasonable as a matter of law, and nothing requires fiduciaries to choose the cheapest possible fund. See Meiners, 898 F.3d at 823–24; Hecker v. Deere & Co., 556 F.3d 575, 586 (7th Cir. 2009).

Plaintiffs reply that the expense ratio comparison chart provides a meaningful benchmark. See [D.E. 21] 21–24. Plaintiffs concede that fiduciaries are not required to select the cheapest investments, but maintain that fiduciaries must at least consider less expensive options. See id. at 22–23.

"Nothing in ERISA requires employers to establish employee benefit plans. Nor does ERISA mandate what kinds of benefits employers must provide if they choose to have such a plan." Lockheed Corp. v. Spink, 517 U.S. 882, 887 (1996). An ERISA fiduciary does not breach its duty of prudence by failing to offer the cheapest investment option. Likewise, "nothing in ERISA requires every fiduciary to scour the market to find and offer the cheapest possible fund." Hecker, 556 F.3d at 586; see Divane, 953 F.3d at 991–92; Meiners, 898 F.3d at 823–24; St. Vincent, 712 F.3d at 718; Terraza v. Safeway Inc., 241 F. Supp. 3d 1057, 1076 (N.D. Cal. 2017); Loomis v. Exelon Corp. ("Loomis I"), No. 06 CV 4900, 2009 WL 4667092, at *1 (N.D. Ill. Dec. 9, 2009) (unpublished). Thus, choosing a fund with a higher expense ratio does not de facto breach the duty of prudence. See, e.g., Hecker, 556 F.3d at 586; White, 2016 WL 4502808, at *11.

To show that a prudent fiduciary in like circumstances would have made a different decision, plaintiffs must provide a "meaningful benchmark" for comparison. Meiners, 898 F.3d at 822; see Davis v. Wash. Univ. in St. Louis, 960 F.3d 478, 484 (8th Cir. 2020). Merely alleging that "cheaper alternative investments with some similarities exist in the marketplace" does not provide a

11

meaningful benchmark. Meiners, 898 F.3d at 823; see Divane, 953 F.3d at 991–92. Rather, plaintiffs must plausibly allege that defendants "could have offered the exact same investment option for a lower price based on the Plan's size." Terraza, 241 F. Supp. 3d at 1077 ("The Court can reasonably infer from this allegation that the Defendants acted imprudently by selecting the more expensive option, all else being equal."); cf. Sandoval ex rel. Novitex Enter. Sols. Ret. Sav. Plan v. Exela Enter. Sols., Inc., No. 3:17cv1575 (DJS), slip op. at 9–12 (D. Conn. Mar. 30, 2020) (unpublished) [D.E. 21-3] (granting motion to dismiss where plaintiffs failed to identify "comparable funds or benchmark indices"); Henderson v. Emory Univ., 252 F. Supp. 3d 1344, 1349–50 (N.D. Ga. 2017) (same).

The availability of lower-cost alternatives is not enough to state a claim for a breach of the duty of prudence, especially where the challenged plan offers diversified investment options. See, e.g., Divane, 953 F.3d at 991–92; Kong v. Trader Joe's Co. ("Kong I"), No. CV 20-05790 PA, 2020 U.S. Dist. LEXIS 181013, at *4–5, 14 (C.D. Cal. Sept. 24, 2020) (unpublished); Kong v. Trader Joe's Co. ("Kong II"), No. CV 20-05790 PA, 2020 U.S. Dist. LEXIS 224835, at *11–16 (C.D. Cal. Nov. 30, 2020) (unpublished). It is not "imprudent to provide options with differing features from which to choose, regardless of whether some perform better than others." Davis, 960 F.3d at 485; see Divane, 953 F.3d at 991–92; Renfro, 671 F.3d at 327. No breach occurs where a plan offered a mix of different investment options with a range of expense ratios. See Divane, 953 F.3d at 991–92; Renfro, 671 F.3d at 327; Loomis v. Exelon Corp. ("Loomis II"), 658 F.3d 667, 670–73 (7th Cir. 2011); Hecker, 556 F.3d at 586. However, offering a mix of options does not insulate a plan if plaintiffs plead enough facts to plausibly allege a breach of the duty of prudence. See, e.g., Sweda, 923 F.3d at 329–32.

12

In Kong I, plaintiffs pleaded a "chart of expense ratios for funds in the Plan against the median fee to demonstrate that the expense ratio for some of the Plan funds was higher than the median fee" and "a chart of 2019 and 2020 expense ratios in an effort to demonstrate the expense ratio for the mutual funds offered compared to other lower cost mutual funds." Kong I, 2020 U.S. Dist. LEXIS 181013, at *4–5 (quotations omitted). The Kong I court held those allegations insufficient to allege a breach. First, "where, as here, a plan offers a diversified array of investment options the fact that some other funds might offer lower expense ratios is not relevant." Id. at *12. Moreover, the comparison chart and median fees were insufficient to state a claim. See id. at *14. Similarly, in Martin v. Careerbuilder, LLC, plaintiffs alleged that cheaper funds were available for 22 of the 23 funds offered, that 45 percent of the funds remained on the plan for five years without change, and that some of the funds were outperformed by cheaper analogues. See Martin v. Careerbuilder, LLC, No. 19-cv-6463, 2020 WL 3578022, at *2 (N.D. Ill. July 1, 2020) (unpublished). Nonetheless, the Martin court held that because the defendants offered a mix of investment options, in the absence of other allegations about inadequate fiduciary performance such as self-dealing, the evidence was inadequate to sustain a claim for relief. See id. at *4–6.

Plaintiffs do not compare sufficiently similar funds. In using category medians, plaintiffs fail to allege that funds were available that were identical save for price differentials. See Terraza, 241 F. Supp. 3d at 1077. A median value for an entire category cannot be said to be identical save for price. Cf. Kruger v. Novant Health, Inc., 131 F. Supp. 3d 470, 476 (M.D.N.C. 2015) ("[L]ower cost funds with identical managers, investment styles, and stocks" are an appropriate comparison.). Merely arguing that approximately 60 percent of the Plan's investment options are above the median for their investment category does not plausibly suggest a breach. See, e.g., Loomis II, 658 F.3d at 671–74.

Plaintiffs also argue that the Committee's relative failure to change investment options since 2014 evinces a breach of the duty of prudence. See Compl. [D.E. 1] ¶ 81; [D.E. 21] 21. Defendants respond that the IPS outlined a philosophy of not changing investment options. See [D.E. 20] 20, 22. Consistency with IPS guidance belies a breach. See White, 2016 WL 4502808, at *7. Moreover, failure to change investment options alone is not sufficient to state a claim for imprudence. See, e.g., Loomis II, 658 F.3d at 671–74; Kong II, 2020 U.S. Dist. LEXIS 224835, at *11. Thus, plaintiffs have failed to state a claim concerning the alleged breach of the duty of prudence arising from the alleged high costs of the investment fund options.

2.

Plaintiffs contend that the Committee breached its duty of prudence by failing to use lower cost share classes available during the Class Period. See Compl. [D.E. 1] ¶¶ 84–93. According to plaintiffs, most of the lower share alternatives were available before the start of the Class Period, and all were available by August 2017. See id. ¶ 90. In support, plaintiffs provide a table of fund options and identical lower cost share classes, evidenced by expense ratios. See id. ¶ 87. Plaintiffs argue that a prudent fiduciary would have moved the Plan's funds into these lower cost share classes. See id. ¶¶ 88, 91–93. In order to qualify for lower cost share classes, a plan usually must invest a minimum of a million dollars, which plaintiffs argue the Plan could have done. See id. ¶¶ 89–90.

Defendants respond that ERISA does not require using lower cost share classes. See [D.E. 20] 24–27. Defendants also contend that higher share classes include many benefits such as revenue sharing, and that plaintiffs cannot plausibly allege that higher share classes were imprudent when they admit the Plan used revenue sharing to pay expenses. See id. at 25–26. Furthermore, defendants argue that the Plan's Form 5500s contradict plaintiffs' claims because they show the Plan routinely moved to lower cost share classes throughout the relevant period. See id. at 26–27.

14

Plaintiffs reply that defendants' arguments raise questions inappropriate to resolve on a motion to dismiss. See [D.E. 21] 24–27.

A fiduciary is not required to select the cheapest option possible. See St. Vincent, 712 F.3d at 718–19; Loomis II, 658 F.3d at 671–74; Hecker, 556 F.3d at 586; Terraza, 241 F. Supp. 3d at 1076; Loomis I, 2009 WL 4667092, at *1. "[M]erely alleging that a plan offered retail rather than institutional share classes is insufficient to carry a claim for fiduciary breach." Marks v. Trader Joe's Co., No. CV 19-10942 PA (JEMx), 2020 WL 2504333, at *8 (C.D. Cal. Apr. 24, 2020) (citation and quotation omitted); see Loomis II, 658 F.3d at 671–74; Kong II, 2020 U.S. Dist. LEXIS 224835, at *17; Kong I, 2020 U.S. Dist. LEXIS 181013, at *12–15; Davis v. Salesforce.com, Inc., No. 20-cv-01753-MMC, 2020 WL 5893405, at *4–6 (N.D. Cal. Oct. 5, 2020) (unpublished); White, 2016 WL 4502808, at *10–12. In analyzing alleged lower cost alternatives, a court should consider "whether the [higher] class share offered other benefits that may have offset any additional costs." Marks, 2020 WL 2504333, at *8; see Intravaia, 2020 WL 58276, at *3 ("[Plaintiffs] allege that a similarly situated comparator incurs approximately 25% the administrative expenses, per participant, of the Plan here. This comparative fact nudges the claim over the line from merely possible to plausible."); Feinberg v. T. Rowe Price Grp., Inc., No. MJG-17-0427, 2018 WL 3970470, at *6 (D. Md. Aug. 20, 2018) (unpublished); Kruger, 131 F. Supp. 3d at 476–77.

Plaintiffs allege that lower cost share classes were available for several of the fund options, providing a chart comparing the less expensive alternatives, and alleging that the higher cost shares did not offer additional benefits to offset the higher costs. See Compl. [D.E. 1] ¶¶ 84–93. Accordingly, plaintiffs have eked across the line and plausibly alleged that the Committee's selection of higher cost share classes breached its duty of prudence.

15

3.

Plaintiffs allege that the Committee failed to investigate adequately the availability of lower cost options including collective trusts or separate accounts. See id. ¶¶ 94–104. Instead, according to plaintiffs, throughout the Class Period, the Plan offered "almost exclusively mutual funds, which are pooled investment products" and not collective trusts, which feature lower fees and are increasingly popular investment options. Id. ¶¶ 94–98. Moreover, plaintiffs also cite separate accounts, which are another lower cost alternative that, unlike mutual funds, allow for fee negotiation. See id. ¶¶ 99–101. Given the Plan's size and its lack of limitations on collective trusts, plaintiffs claim the Committee should have investigated the availability of collective trusts or separate accounts. See id. ¶¶ 103–04.

Defendants respond that ERISA does not require collective trusts or separate accounts, and that plaintiffs lack knowledge of what options the fiduciaries investigated. See [D.E. 20] 27–28. Moreover, the 2018 Form 5500 discloses that the Plan included a collective trust option. See id. at 28. Plaintiffs reply that including "one collective trust option out of twenty-one options when an additional ten were available" is not sufficient to defeat allegations of imprudence. [D.E. 21] 28 (emphasis omitted).

Plans "are under no duty to offer alternatives to mutual funds, even when the plaintiffs argue they are markedly superior." Moitoso v. FMR LLC, 451 F. Supp. 3d 189, 211 (D. Mass. 2020); see Loomis II, 658 F.3d at 672–74; Hecker, 556 F.3d at 586; Davis, 2020 WL 5893405, at *6. However, courts disagree about whether fiduciaries have a duty to investigate mutual fund alternatives. Some courts have held that ERISA imposes "no fiduciary duty to investigate alternatives to mutual funds." Moitoso, 451 F. Supp. 3d at 212 (reasoning that collective trusts and separate accounts "differ so much from mutual funds . . . that other courts have found it impossible to make an 'apples-to-

16

oranges' comparison of the two") (citation omitted); accord Davis, 2020 WL 5893405, at *6. Other courts have held that defendants plausibly breach their duty of prudence by choosing particular mutual funds and failing to investigate lower cost alternatives such as collective investment trusts or separate accounts. See Falberg v. Goldman Sachs Grp., Inc., No. 19-CIV-9910 (ER), 2020 WL 3893285, at *10 (S.D.N.Y. July 9, 2020) (unpublished); Pinnell v. Teva Pharms. USA, Inc., No. 19-5738, 2020 WL 1531870, at *5–6 (E.D. Pa. Mar. 31, 2020) (unpublished); In re M&T Bank Corp. ERISA Litig., No. 16-CV-375 FPG, 2018 WL 4334807, at *8–9 (W.D.N.Y. Sept. 11, 2018) (unpublished).

ERISA does not impose a duty to offer alternatives to mutual funds. See, e.g., Loomis II, 658 F.3d at 672–74; Hecker, 556 F.3d at 586; Moitoso, 451 F. Supp. 3d at 211; Davis, 2020 WL 5893405, at *6. Moreover, even if ERISA imposes a duty to investigate such alternatives, plaintiffs admit that the Plan did offer a collective trust option. By definition, the Committee investigated the option and offered the option of a collective investment trust. On these facts, plaintiffs (at most) have alleged a possible breach, but not alleged facts supporting a reasonable inference that the Committee failed to investigate the availability of lower cost options including collective investment trusts or separate accounts. Thus, plaintiffs have failed to state a claim.

4.

Plaintiffs allege that the Committee acted imprudently in failing to invest in lower cost passively- and actively-managed funds. See Compl. [D.E. 1] ¶¶ 105–08. Plaintiffs also claim the Committee acted imprudently in failing to consider passively-managed funds in place of actively-managed ones. See id. ¶¶ 105–12. In support, plaintiffs provide a chart allegedly showing that actively-managed funds both charged higher expense ratios and lagged in performance to passively-managed comparator funds, as demonstrated by the funds' five-year returns. See id. ¶ 110. Plaintiffs

17

contend that their comparisons are appropriate, given that plaintiffs compared funds in the same peer group and used the same data points to calculate efficiency. See id. ¶ 111.

Defendants respond that plaintiffs inappropriately compare actively- and passively-managed funds. See [D.E. 20] 28. Defendants contend that plaintiffs "cherry-pick" funds to compare, and that plaintiffs rely on hindsight in arguing that the Committee inappropriately selected underperforming actively-managed funds. Id. at 28–29. Additionally, defendants reject the claim that no prudent fiduciary would find benefits in offering actively-managed funds. See id. at 29. According to defendants, plaintiffs' allegations against including actively-managed funds are "particularly misplaced in light of the fact that ERISA specifically requires diversification" of investments. Id. at 29–30.

Plaintiffs reply that ERISA requires fiduciaries to offer passively-managed investment options when prudent under the prevailing circumstances. See [D.E. 21] 29–31. According to plaintiffs, defendants failed to investigate whether all actively-managed funds could be replaced with comparable passively-managed funds. See id.

As for plaintiffs' claim that the Committee failed to investigate passively-managed lower cost alternatives during the Class Period and thereby breached its fiduciary duty, "ERISA does not mandate passive management (with lower fees) over active management." Sacerdote II, 328 F. Supp. 3d at 313 n.114; see Loomis II, 658 F.3d at 672–74; Hecker, 556 F.3d at 586. Moreover, "allegations that passively managed funds are available as alternatives to actively managed funds offered in the Plan do not suffice to demonstrate imprudence." Davis, 2020 WL 5893405, at *3; see Loomis II, 658 F.3d at 672–74; Hecker, 556 F.3d at 586; Kong II, 2020 U.S. Dist. LEXIS 224835, at *13. Comparing actively- and passively-managed funds is like "[c]omparing apples and oranges" and cannot create a meaningful benchmark. Davis, 960 F.3d at 485; see Loomis II, 658 F.3d at

18

672–74; Hecker, 556 F.3d at 586; Amron v. Morgan Stanley Inv. Advisors Inc., 464 F.3d 338, 345 (2d Cir. 2006) ("That a mutual fund has an expense ratio higher than Vanguard, a firm known for its emphasis on keeping costs low, raises little suspicion . . . ."); Kong II, 2020 U.S. Dist. LEXIS 224835, at *13; Martin, 2020 WL 3578022, at *4; Davis, 2020 WL 5893405, at *3; Sacerdote II, 328 F. Supp. 3d at 313 n.114.

Alternatively, even if actively- and passively-managed funds can be compared, the complaint does not contain a meaningful benchmark. See Davis, 2020 WL 5893405, at *4. "Allegations based on five-year-returns are not sufficiently long-term to state a plausible claim of imprudence." Id. (citation and quotation omitted); see Patterson v. Stanley, No. 16-CV-6568 (RJS), 2019 WL 4934834, at *12 (S.D.N.Y. Oct. 7, 2019) (unpublished); Dorman v. Charles Schwab Corp., No. 17-cv-00285-CW, 2019 WL 580785, at *6 (N.D. Cal. Feb. 8, 2019) (unpublished). Likewise, the complaint fails to plausibly allege a failure to investigate. Accordingly, the court grants defendants' motion to dismiss regarding passively-managed lower cost funds.

## 5.

Plaintiffs allege that defendants paid unreasonable recordkeeping fees to Mass Mutual throughout the Class Period and thereby failed to monitor the Plan's administrative fees. See Compl. [D.E. 1] ¶¶ 113–31. The "duty of the Plan fiduciaries with respect to the recordkeeping fees paid by the Plan is the 'prudent man' standard." Kruger, 131 F. Supp. 3d at 478; see 29 U.S.C. § 1104(a)(1)(B). A "plan fiduciary's failure to reduce recordkeeping costs through negotiation or the solicitation of competing bids may in some cases breach the duty of prudence." Silva v. Evonik Corp., CV No. 20-2202, slip op. at 8 (D.N.J. Dec. 30, 2020) (unpublished) [D.E. 25-1]; see Sweda, 923 F.3d at 332; Tussey, 746 F.3d at 336; Pinnell, 2020 WL 1531870, at *5; Nicolas v. Trs. of

19

<u>Princeton Univ.</u>, No. 17-3695, 2017 WL 4455897, at *4 (D.N.J. Sept. 25, 2017) (unpublished); <u>Kruger</u>, 131 F. Supp. 3d at 478.

According to plaintiffs, defendants failed to prudently manage and control the Plan's recordkeeping and administrative costs by failing to (1) track the recordkeeper's expenses, (2) identify the fees being paid, particularly those paid by revenue sharing, and (3) remain informed about marketplace trends. Plaintiffs also cite the Plan's allegedly unreasonably high recordkeeping costs. <u>See</u> Compl. [D.E. 1] ¶¶ 119–22. In support, plaintiffs cite the <u>401k Averages Book</u> for the proposition that for plans with 2,000 participants and $200 million in assets (which is smaller than the size of the Plan), the average recordkeeping/administrative fee (through direct compensation) was $5 per participant with a range of $0 to $43 per participant. <u>See id.</u> ¶ 123. Plaintiffs argue that the Plan's average fee of $20 per participant in direct fees during the Class Period is unreasonable given that per-participant fees tend to decrease inversely to the number of participants. <u>See id.</u> ¶¶ 116, 124–28. Moreover, according to plaintiffs, if all indirect revenue sharing reported were paid to the recordkeeper, then before any rebates the per-participant recordkeeping fee would have ranged from $54 to $143, well-above the recognized reasonable rates. <u>See id.</u> ¶ 128. Plaintiffs also note that defendants claim to have returned a certain amount of revenue sharing to the Plan, but account statements fail to show that these amounts were returned directly to plaintiffs' retirement accounts. Therefore, plaintiffs contend that the amounts went to pay additional fees. <u>See id.</u> ¶ 129. Given the size of the Plan, plaintiffs allege that the fiduciaries imprudently failed to obtain lower cost recordkeeping services. <u>See id.</u> ¶¶ 130–31.

Defendants respond that plaintiffs fail to state a claim for breach of the duty of prudence regarding the Plan's recordkeeping fees. <u>See</u> [D.E. 20] 30–35. First, according to defendants, fiduciaries are required to obtain a reasonable fee, not the lowest possible fee, and plaintiffs allege

20

no facts concerning a flawed process or failure to negotiate. See id. at 30–31. Defendants also argue that plaintiffs fail to state a plausible claim that the recordkeeping fees paid to Mass Mutual during the Class Period were unreasonable, because plaintiffs do not provide any average recordkeeping fees comparable to the Plan's number of participants and assets. See id. at 32. Furthermore, according to defendants, plaintiffs fail to provide a meaningful benchmark because they do not allege any details about recordkeeping services. See id. at 32–33. Lastly, defendants contend that plaintiffs' allegations depend on the assumption that Mass Mutual received all indirect revenue sharing, which the account statements contradict. See id. at 34–35.

A plaintiff raising an excessive fee claim under ERISA must allege "that fees were excessive related to the services rendered." Young v. Gen. Motors Inv. Mgmt. Corp., 325 F. App'x 31, 33 (2d Cir. 2009) (unpublished) (quotation omitted); see Abraha v. Colonial Parking, Inc., 243 F. Supp. 3d 179, 188 (D.D.C. 2017); Perez v. Chimes D.C., Inc., No. RDB-15-3315, 2016 WL 4993293, at *8 (D. Md. Oct. 12, 2016) (unpublished). Plaintiffs allege that a per participant fee of $20 is unreasonable when smaller plans average a per participant fee of $5 according to the 401k Averages Book. See Compl. [D.E. 1] ¶ 123–25. Plaintiffs also allege that all recordkeepers provide the same core group of services. See id. ¶ 113. This claim ekes across the plausibility line, and the court allows plaintiffs' claim of imprudence regarding recordkeeping fees to proceed. See Silva, slip op. at 8–9; Pinnell, 2020 WL 1531870, at *5; Kruger, 131 F. Supp. 3d at 479.

## C.

Count one alleges that in addition to a breach of the duty of prudence, the Committee also breached the duty of loyalty. See Compl. [D.E. 1] ¶¶ 132–38. ERISA requires plan fiduciaries to "discharge [their] duties . . . for the exclusive purpose of [] providing benefits to participants and their beneficiaries; and . . . defraying reasonable expenses of administering the plan." 29 U.S.C. §

21

1104(a)(1)(A); see DiFelice, 497 F.3d at 418–19; Donovan v. Bierwirth, 680 F.2d 263, 271 (2d Cir. 1982); Reetz, 2019 WL 4233616, at *5.  To state a claim for breach of the duty of loyalty, plaintiffs must plausibly allege that the Committee acted with the purpose of benefitting itself or a third party. See Reetz, 2019 WL 4233616, at *5; Cassell v. Vanderbilt Univ., 285 F. Supp. 3d 1056, 1062 (M.D. Tenn. 2018); Nicolas, 2017 WL 4455897, at *3.

Defendants argue that the court should dismiss plaintiffs' breach of the duty of loyalty claim because plaintiffs allege no facts suggesting that the Committee acted in the interest of anybody other than the Plan participants or their beneficiaries.  See [D.E. 20] 35–36.  Plaintiffs respond that their allegations of excessive recordkeeping fees create an inference that the Committee acted to benefit defendants or the recordkeepers.  See [D.E. 21] 33–34.

In order to state a claim for breach of the duty of loyalty under ERISA, "a plaintiff must do more than simply recast purported breaches of the duty of prudence as disloyal acts."  Sacerdote v. N.Y. Univ. ("Sacerdote I"), No. 16-cv-6284 (KBF), 2017 WL 3701482, at *5 (S.D.N.Y. Aug. 25, 2017) (unpublished); see Allen v. Wells Fargo & Co., 967 F.3d 767, 777 (8th Cir. 2020); Nicolas, 2017 WL 4455897, at *3.  Loyalty claims cannot "piggyback" prudence claims, but must contain independent facts "suggesting [that] Defendant benefitted, financially or otherwise, from any decisions related to the Plan[] or engaged in disloyal conduct in order to benefit itself or someone other than the Plan['s] beneficiaries."  Nicolas, 2017 WL 4455897, at *3; see Allen, 967 F.3d at 777; Cassell, 285 F. Supp. 3d at 1062–63.  Specifically, prudence claims regarding recordkeeping may not simply be repackaged as a disloyalty claim without additional allegations.  See Allen, 967 F.3d at 777; Nicolas, 2017 WL 4455897, at *3.

22

Plaintiffs have not plausibly alleged that the Committee ever acted in the interest of a party other than the Plan participants or their beneficiaries. Thus, the court dismisses plaintiffs' breach of the duty of loyalty claim.

### D.

In count two, plaintiffs allege that PPD and the Board failed to adequately monitor the Committee. See Compl. [D.E. 1] ¶¶ 139–45. Plaintiffs contend that PPD and the Board violated their duty to monitor by failing to evaluate the performance of the Committee, failing to monitor the Committee's processes, and failing to remove Committee members whose performance was inadequate. See id. ¶ 143. An appointing fiduciary has the duty to review "[a]t reasonable intervals the performance of trustees and other fiduciaries . . . in such a manner as may be reasonably expected to ensure that their performance has been in compliance with the terms of the plan and statutory standards, and satisfies the needs of the plan." 29 C.F.R. § 2509.75-8, at FR-17; see Coyne & Delany Co. v. Selman, 98 F.3d 1457, 1465–66 (4th Cir. 1996). A claim for the failure to monitor derives from and depends on an "underlying breach of fiduciary duty cognizable under ERISA." In re Duke Energy ERISA Litig., 281 F. Supp. 2d 786, 795 (W.D.N.C. 2003); see Feinberg, 2018 WL 3970470, at *7; Kruger, 131 F. Supp. 3d at 480; In re Constellation Energy Grp., Inc., 738 F. Supp. 2d 602, 614 (D. Md. 2010); In re Wachovia Corp. ERISA Litig., No. 3:09cv262, 2010 WL 3081359, at *17 (W.D.N.C. Aug. 6, 2010) (unpublished).

Defendants contend that because plaintiffs fail to state a claim for a breach of the duty of prudence, plaintiffs also fail to state a claim for breach of the duty to monitor. See [D.E. 20] 36–37. However, in light of this court's conclusion that a portion of the prudence claim survives for now, plaintiffs have alleged a plausible claim for breach of the duty to monitor. See Cunningham v. Cornell Univ., No. 16-cv-6525 (PKC), 2017 WL 4358769, at *11 (S.D.N.Y. Sept. 29, 2017)

23

(unpublished). The "duty to monitor claim is only as broad as the surviving prudence claim and is otherwise dismissed." Id.

E.

Defendants move to dismiss plaintiffs' claims for injunctive relief under Rule 12(b)(1) for lack of subject-matter jurisdiction. See [D.E. 20] 37–38; cf. Compl. [D.E. 1] ¶¶ 50, 53, 145. A motion to dismiss under Rule 12(b)(1) tests subject-matter jurisdiction, which is the court's "statutory or constitutional power to adjudicate the case." Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 89 (1998) (emphasis omitted); see Holloway v. Pagan River Dockside Seafood, Inc., 669 F.3d 448, 453 (4th Cir. 2012); Constantine v. Rectors & Visitors of George Mason Univ., 411 F.3d 474, 479–80 (4th Cir. 2005). A federal court "must determine that it has subject-matter jurisdiction over [a claim] before it can pass on the merits of that [claim]." Constantine, 411 F.3d at 479–80. In making that determination, the court "may consider evidence outside the pleadings without converting the proceeding into one for summary judgment." Velasco v. Gov't of Indon., 370 F.3d 392, 398 (4th Cir. 2004); see Al Shimari v. CACI Premier Tech., Inc., 840 F.3d 147, 154 (4th Cir. 2016); In re KBR, Inc., Burn Pit Litig., 744 F.3d 326, 333 (4th Cir. 2015); Williams v. United States, 50 F.3d 299, 304 (4th Cir. 1995). Plaintiffs, as the parties asserting that this court has subject-matter jurisdiction over the claims, must prove that subject-matter jurisdiction exists. See, e.g., Steel Co., 523 U.S. at 103–04; Evans v. B.F. Perkins Co., 166 F.3d 642, 647 (4th Cir. 1999); Richmond, Fredericksburg & Potomac R.R. v. United States, 945 F.2d 765, 768 (4th Cir. 1991).

In order to establish Article III standing, a plaintiff must have suffered an "injury in fact"—an invasion of a legally protected interest which is (a) concrete and particularized and (b) "actual or imminent, not 'conjectural' or 'hypothetical.'" Lujan v. Defs. of Wildlife, 504 U.S. 555, 560 (1992) (internal citations and quotations omitted). "Second, there must be a casual connection between the

24

injury and the conduct complained of—the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court." Id. (cleaned up). "Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." Id. at 561 (cleaned up). A plaintiff must demonstrate Article III standing for each type of relief sought. See Summers v. Earth Island Inst., 555 U.S. 488, 493 (2009).

When a plaintiff seeks injunctive relief, the "injury in fact" element of standing requires the plaintiff to plausibly allege a substantial likelihood of future harm. See City of Los Angeles v. Lyons, 461 U.S. 95, 111 (1983); Harty v. Luihn Four, Inc., 747 F. Supp. 2d 547, 551–52 (E.D.N.C. 2010). In a class action, at least one named plaintiff must satisfy that requirement. See Warth v. Seldin, 422 U.S. 490, 502 (1975); O'Shea v. Littleton, 414 U.S. 488, 494 (1974); McNair v. Synapse Grp. Inc., 672 F.3d 213, 223 (3d Cir. 2012); Cruz v. Am. Airlines, Inc., 356 F.3d 320, 329 (D.C. Cir. 2004).

PPD no longer employs the named plaintiffs, and the named plaintiffs do not participate in the Plan. Thus, defendants argue that they lack standing. See [D.E. 20] 37–38. Plaintiffs respond that the named plaintiffs have standing as class representatives to seek injunctive relief. See [D.E. 21] 35–36.

Former plan participants "do not have standing to seek injunctive relief because they are not realistically threatened by [a defendant's] future breaches of fiduciary duties." Urakchin v. Allianz Asset Mgmt. of Am., L.P., No. 8:15-cv-1614-JLS-JCGx, 2017 WL 2655678, at *9 (C.D. Cal. June 15, 2017) (unpublished) (citation and quotations omitted); see Marks, 2020 WL 2504333, at *9 (collecting cases). When a class representative lacks standing to pursue his claim, "it is immaterial whether any member of the potential class would have standing to pursue this claim." Hall v. Lhaco,

25

<u>Inc.</u>, 140 F.3d 1190, 1196–97 (8th Cir. 1998). Accordingly, the court grants defendants' motion to dismiss plaintiffs' claims for injunctive relief.

III.

In sum, court GRANTS in part and DENIES in part defendants' motion to dismiss for failure to state a claim [D.E. 19], and GRANTS defendants' motion to dismiss plaintiffs' request for injunctive relief [D.E. 19]. Whether plaintiffs' remaining claims will survive a motion for summary judgment is an issue for another day.

SO ORDERED. This 31 day of March 2021.

J. Dever

**JAMES C. DEVER III**
**United States District Judge**

26