IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION

| | |
|---|---|
| KARL KENDALL, SUZANNE RAINEY and VINCENZO PERNICE, individually and on behalf of those similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>PHARMACEUTICAL PRODUCT DEVELOPMENT, LLC, BOARD OF DIRECTORS OF PHARMACEUTICAL PRODUCT DEVELOPMENT, LLC, THE BENEFITS ADMINISTRATIVE COMMITTEE, and JOHN DOES 1-30.<br><br>Defendants. | Civil Action No. 7:20-cv-00071-D |

**DECLARATION OF MARK K. GYANDOH IN SUPPORT OF PLAINTIFFS KARL KENDALL, SUZANNE RAINEY, AND VINCENZO PERNICE'S UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT, PRELIMINARY CERTIFICATION OF SETTLEMENT CLASS, APPROVAL OF CLASS NOTICE, APPROVAL OF PLAN OF ALLOCATION, <u>AND SCHEDULING OF A FAIRNESS HEARING</u>**

I, Mark K. Gyandoh, Esquire, as Class Counsel, declare as follows:

1. I am a member in good standing of the bar of the Commonwealth of Pennsylvania and have personal knowledge of the facts set forth below and, if called as a witness, I could and would testify competently thereto.

2. I am chair of the Fiduciary Practice Group at Capozzi Adler, P.C., and have been the lead attorney for my firm in this litigation representing Plaintiffs and the proposed Settlement Class in the above-captioned action.

*Procedural History*

3. Following several months of investigation, including engaging consulting experts and researching and analyzing relevant case law to determine potential legal claims, Plaintiffs Karl Kendall, Suzanne Rainey, and Vincenzo Pernice, participants in the Pharmaceutical Product Development, LLC Retirement Savings Plan (the "Plan"), filed a Class Action Complaint ("Complaint") on April 15, 2020 (ECF No. 1) against three categories of Defendants: (1) Pharmaceutical Product Development, LLC ("PPD"); (2) the Board of Directors of Pharmaceutical Product Development its members (the "Board"); and (3) The Benefits Administrative Committee and its members (the "Committee"). Plaintiffs alleged, *inter alia*, that throughout the putative Class Period (April 15, 2014 through the date of judgment), Defendants selected a slate of investment options for the Plan that were imprudent due to their high fees where identical funds – differing only in price – were available in the marketplace. Plaintiffs alleged had there been a prudent process in place, the majority of these funds would have been replaced with the identical less expensive alternatives as early as the beginning of the Class Period.

4. In addition to the aforementioned claims, Plaintiffs alleged the Plan suffered millions of dollars in damages due to unreasonably high recordkeeping fees that ranged from $85 to $107 per participant annually from 2014 to 2019 when a reasonable amount should have been no more than $35 per participant.

5. Plaintiffs' claims fell under four main theories of liability. The first two theories were that, during the Class Period, Defendants failed to utilize the lower fee share classes that were identical in all ways except price to the funds already in the Plan (Cmplt. at ¶¶ 84-93) and failed to investigate the availability of lower cost collective trusts and separate accounts (Cmplt. at ¶¶ 94-104).

6. The third theory was that Defendants failed to select available lower cost passively and actively managed funds (Cmplt. at ¶¶ 105-112). Finally, the fourth theory of liability was that Defendants failed to monitor or control the Plan's recordkeeping expenses (Cmplt. at ¶¶ 113-131).

7. On July 31, 2020, Defendants filed their Motion to Dismiss Pursuant to Rules 12(b)(1) and 12(b)(6) (ECF No. 19).

8. On August 21, 2020, Plaintiffs filed their Brief In Opposition to Defendants' Motion to Dismiss the Complaint (ECF No. 21).

9. On September 4, 2020, Defendants filed a Reply In Support of their Motion to Dismiss (ECF No. 22). Then on March 31, 2021, the Court entered an Order granting in part and denying in part the motion to dismiss (ECF No. 28). The Court allowed Plaintiffs to proceed with their allegations that Defendants should have invested in the lowest cost share class available due to the Plan's size. The Court also allowed Plaintiffs to proceed with their allegations that Plan participants were charged excessive recordkeeping fees. Of note, Defendants used revenue sharing from the higher-cost share classes of Plan funds to pay for the Plan's recordkeeping. Accordingly, the lower cost share class claims and recordkeeping claims overlap.

10. The Court also permitted Plaintiffs to proceed with Count II, alleging certain Defendants failed to adequately monitor their delegates.

11. The Court dismissed Plaintiffs' claims: (1) that the Committee failed to investigate the availability of lower cost collective investment trusts or separate account options, and (2) that Defendants failed to investigate the availability of passively-managed lower cost funds. The Court also dismissed Plaintiffs' claims for breach of the duty of loyalty and injunctive relief.

12. Defendants filed their Answer and Affirmative Defenses on April 14, 2021 (ECF No. 29).

3

13. On May 28, 2021, the Parties filed a Rule 26(f) Report (ECF No. 31).

14. The Court entered a Pretrial Scheduling Order on July 7, 2021 (ECF No. 31).

15. On November 29, 2021, the Parties filed a Joint Motion to Stay All Deadlines to permit the Parties to pursue settlement negotiations (ECF No. 38).

16. The Court entered an Order granting the motion to stay on December 1, 2021 (ECF No. 40).

17. On January 31, 2022, the Parties filed a Notice of Settlement advising the Court of the settlement (ECF No. 41).

*Discovery Practice*

18. On January 14 2020, prior to filing suit, Plaintiffs requested numerous documents and information from Defendants pursuant to Section 104(b)(4) of ERISA.

19. In response to Plaintiffs' request, Defendants produced numerous responsive documents.

20. On June 30, 2021, Defendants served their First Set of Interrogatories and First Set of Requests for Production to all Plaintiffs. Plaintiffs served responses to Defendants' requests on August 6, 2021.

21. On June 8, 2021, Plaintiffs served their First Request for Production of Documents Directed to All Defendants. Defendants served responses to Plaintiffs' requests on July 8, 2021.

22. Defendants have produced over 9,100 pages of core documents, including Plan documents, summary plan descriptions, participant investment disclosures, committee charters, investment policy statements, trust and recordkeeping agreements, fee schedules, committee meeting minutes and materials, and account statements.

*Settlement Negotiations*

23. On January 26, 2022, the Parties participated in a mediation before David Geronemus, Esquire, a neutral, third-party private mediator with experience mediating ERISA class actions.

24. Plaintiffs' counsel submitted extensive mediation statements and Plaintiffs' counsel personally and meaningfully participated in the mediation.

25. After the Court's motion to dismiss order, the only claims remaining in the Action under Count I of the Complaint were claims related to the alleged failure of Defendants to use the lowest share classes available and failure to monitor or control the Plan's recordkeeping expenses and Count II related to the failure of Defendants to adequately monitor other fiduciaries.

26. Reviewing all of the relevant information, Plaintiffs determined maximum potential damages to the Plan to be no more than $2.5 million before calculation of prejudgment interest. This damages amount assumes all revenue derived from funds selected by Plan participants, including revenue placed in the Plan Expense Reimbursement Account (PERA) to be used by the Plan to pay direct and necessary expenses of the Plan, should have been considered fees for recordkeeping and administrative costs, and a reasonable per participant annual fee should have been $35 per participant.

27. Defendants disagreed with Plaintiffs' methodology for calculating damages because, among other things, they argue the revenue Plaintiffs alleged was received by the Plan's recordkeeper far exceeded the Plan's contractually agreed rates with its recordkeeper. That is because, as they assert, a significant portion of the revenue Plaintiffs alleged was received by the Plan's recordkeeper went into the PERA account and not to the Plan's recordkeeper.

28. Following a full day of mediation under the auspices of David Geronemus, Esquire, the parties arrived at a settlement in principle, settling this matter for $775,000.00. Several weeks

of negotiations followed to finalize the terms of the Settlement Agreement. That Settlement Agreement, inclusive of exhibits, was finalized and executed on March 30, 2022. It is attached here as Exhibit 1.

29. PPD is a large company with enough assets to pay the Settlement.

30. Plaintiffs did not discount the amount of the Settlement based on Defendants' ability to pay.

### *The Settlement Terms*

31. The Settlement provides PPD (or its insurance carrier) will pay $775,000.00 – the Gross Settlement Amount – to be allocated to participants on a pro-rata basis pursuant to the proposed Plan of Allocation (*see* Exhibit B to Settlement Agreement) in exchange for releases and dismissal of this action (described in Article 7 of the Settlement Agreement).

32. The Gross Settlement Fund will be used to pay the participants' recoveries, administrative expenses to facilitate the Settlement, and Plaintiffs' counsel's attorneys' fees and costs, and Class Representatives' Compensation if awarded by the Court.

33. The Class Members include all individuals in the Settlement Class, or:

> all persons who participated in the Plan at any time during the Class Period, including any Beneficiary of a deceased Person who participated in the Plan at any time during the Class Period, and any Alternate Payee of a Person subject to a QDRO who participated in the Plan at any time during the Class Period. Excluded from the Settlement Class are the members of the Land O'Lakes, Inc. Retirement Plan Committee during the Class Period.

*See* Settlement Agreement, Section 1.45. Class Period means the period from April 15, 2014 through the date of the Preliminary Approval Order. *Id.*, Section 1.13.

34. A portion of the funds from the Net Settlement Amount will be allocated to each Class Member in proportion to the sum of that Class Member's Balance as compared to the sum of the Balance for all Class Members. *See* Plan of Allocation at II.C. Class Members who are

entitled to a distribution of less than the minimum amount of $10.00 will receive $10.00, the De Minimis amount, from the Net Settlement Amount. *Id.* at II.D. For Class Members with an Active Account (an account with a positive balance) as of the date of the Final Order, each Class Member's Final Entitlement Amount will be allocated into their Plan account. *Id.* at II.E. Former Participants shall be paid directly by the Settlement Administrator by check. *Id*. at II.F.

35. Class Counsel intends to seek to recover their attorneys' fees not to exceed $258,307.50. *See* Settlement Agreement, Section 1.4. Class Counsel also intends to seek to recover litigation costs and expenses advanced and carried by Class Counsel for the duration of this litigation, not to exceed $50,000.00. *Id.* Additionally, Class Counsel intends to seek Class Representatives' Case Contribution Awards in an amount not to exceed $10,000 each for Class Representatives Karl Kendall, Suzanne Rainey, and Vincenzo Pernice. *Id.* at 1.9.

36. Defendants also intend to retain an Independent Fiduciary to approve and authorize the settlement on behalf of the Plan. *See* Settlement Agreement, Sections 1.26, 2.1. The fees and expenses of the Independent Fiduciary, not to exceed $25,000, will be paid from the Gross Settlement. *Id.*, Sections 1.2, 2.1.3.

*Counsel's Experience*

37. I received both my J.D. (2001) and LLM in trial advocacy (2011) from Temple University School of Law. While at Temple, I was the research editor for the Temple International and Comparative Law Journal. After law school I clerked for a year with a Judge on the New Jersey State Appellate Court.

38. I have been litigating ERISA fiduciary breach lawsuits for over 16 years, first at my prior firm of Kessler Topaz Meltzer & Check, LLP (KTMC), and currently at Capozzi Adler where, as noted above, I am chair of the Fiduciary Practice Group. Over my career I have been

actively involved in many high-profile ERISA class actions. For example, I was one of the lead attorneys for plaintiffs in *Fifth Third Bancorp, et al., v. Dudenhoeffer, et al.*, 573 U.S. 409, 134 S. Ct. 2459 (2014), a seminal Supreme Court decision that clarified the unwavering duties owed by fiduciaries to pension plan participants. *See* biography at https://capozziadler.com/mark-k-gyandoh-esquire/.

39. My partner Donald Reavey who chairs the firm's Litigation Practice Group is an experienced litigator frequently handling multi-million dollar disputes. A 1998 graduate of Penn State, Dickinson School of Law, Mr. Reavey has leaned on his two-decade plus litigation experience in filing and litigating dozens of ERISA breach of fiduciary duty actions over the last several years. *See* biography at https://capozziadler.com/donald-r-reavey-esquire/.

40. Other members of the Fiduciary Practice Group include Mid-Level Associate, Gabrielle P. Kelerchian, a 2017 graduate of Villanova Law School with several years of litigation experience. *See* biography at https://capozziadler.com/gabrielle-p-kelerchian-esquire/. Before joining Capozzi Adler, Ms. Kelerchian zealously represented individuals in medical malpractice and personal injury cases at Philadelphia area law firms. Rounding out the ERISA team are our support staff which include paralegals and other paraprofessionals who assist in the practice.

41. Capozzi Adler has significant resources with three office locations. We have been serving clients for over 24 years offering a full range of legal services. I and my firm have been lead or co-lead interim counsel in dozens of ERISA breach of fiduciary duty actions. Recently, Capozzi Alder was appointed interim co-lead class counsel in *Tracy et al. v. The American National Red Cross*, No. 1:21-cv-00541-EGS (D.D.C. Apr. 16, 2021) an ERISA class action analogous to the instant Action. Capozzi Adler was also appointed co-lead class counsel in *Boley, et al. v. Universal Health Services, Inc., et al.* 2021 WL 859399 (E.D.Pa. Mar. 8, 2021).

Additionally, Capozzi has been appointed interim lead or co-lead class counsel in several analogous ERISA breach of fiduciary duty matters. *See, e.g., Bilello, et al., v. Estee Lauder, Inc., et al.*, No. 1:20-cv-04770-JMF (S.D.N.Y. Aug. 10, 2020) (Doc. 11.) (appointing Capozzi Adler interim lead class counsel); *Covington et al. v. Biogen Inc. et al.*, No. 1:20-cv-11325 (D. Mass. Oct. 6, 2020 (Doc. 24) (appointing Capozzi Adler interim Co-Lead Class Counsel); *Tepper et al. v. Omnicom Group et al.*, No. 20-cv-4141 (S.D.N.Y. Sept. 17, 2020) (Doc. 13) (same); *Johnson et al. v. Quest Diagnostics et al.*, No. 2:20cv07936 (D.N.J. Oct. 2, 2020) (Doc. 7) (same).

42. Of particular importance here, while I was counsel at KTMC and in my current position, in the course of prosecuting ERISA class actions such as this, I have supervised the preparation of numerous consolidated pleadings, responses to motions to dismiss, drafting of discovery requests and review of hundreds of thousands of pages of plan-related documents and related documentation, and litigated cases through the summary judgment and trial phases.

43. The firm strives to obtain the best results for class members in every circumstance. We have successfully defeated motions to dismiss similar allegations in numerous actions. *See, e.g., Kendall et al v. Pharmaceutical Product Development, LLC*, No. 7:20-cv-00071-D (ECF No. 28) (E.D.N.C. March 31, 2021) (upholding allegations that plan fiduciaries selected higher-priced identical share classes and overpaid for recordkeeping); *Davis v. Magna Int'l of America, Inc.*, 2021 WL 1212579 (E.D. Mich. March 31, 2021) (same); *Jones v. Coca-Cola Consolidated, Inc.*, No. 3:20-cv-00654-FDW-DSC (ECF No. 25) (W.D.N.C. March 31, 2021) (same); *McCool v. AHS Management Company, Inc.*, 2021 WL 826756 (M.D. Tenn. March 4, 2021) (same); *Parmer, et al. v. Land O'Lakes, Inc., et al.*, 2021 WL 464382 (D. Minn. Feb 9, 2021) (same); *In re Medstar ERISA Litig.*, 2021 WL 391701 (D. Md. Feb. 4, 2021) (same); *Silva v. Evonik Corp.* slip op. (D.N.J.

Dec. 30, 2020) (same); *Pinnell, et al. v. Teva Pharmaceuticals USA, Inc., et al.*, 2020 WL 1531870 (E.D.Pa. Mar. 31, 2020).

44. My firm has also engaged in successful settlement negotiations and mediations in ERISA actions, recovering millions of dollars for its clients and class members. *See, e.g., Buescher, et al., v. Brenntag North America, Inc., et al.*, No. 5:20-cv-00147 (E.D. Pa. 2020) (recovered $2,300,000.00 class settlement); *Pinnell, et al., v. Teva Pharmaceuticals USA, Inc., et al.*, No. 2:19-cv-05738-MAK (E.D. Pa. 2019) (settlement in the amount of $2,550,000.00 after successful mediation); *Freck v. Cerner Corp., et al.*, No. 4:20-CV-00043-BCW (W.D. Mo. 2020) (recovered $4,050,000.00 class settlement); *Gerken, et al. v. ManTech Int'l Corp, et al.*, No. 1:20-cv-01536 (E.D. Va. 2020) (recovered $1,200,000.00 class settlement).

45. Capozzi Adler also has the resources and commitment to deploy those resources on behalf of the proposed class in this case and has in fact done so as evidenced by our litigation efforts to date, including conducting discovery and attending mediation.

46. Given my years of experience in this field of law, including, trying an analogous case to an unfavorable verdict for plaintiffs in *Brieger v. Tellabs, Inc.*, 659 F. Supp. 2d 967 (N.D. Ill. 2009), I believe the settlement achieved in this case is adequate and certainly reasonable and fair.

47. Additionally, as a long-time member of the ERISA class action bar, I am aware of the excellent reputation of counsel at Alston & Bird LLP. Their experience in ERISA cases further confirms the arms-length nature of negotiations in this case.

***Plaintiffs Are Adequate Class Representatives***

48. The Settlement Class encompasses thousands of Plan participants. At the end of 2020 there were over 11,000 participants with account balances in the Plan. *See* 2020 Form 5500 filed with the U.S. Dept. of Labor.

49. Acknowledging that Class Notices have not been mailed to the Settlement Class, Plaintiffs are not aware of any Settlement Class members who intend to oppose the Settlement.

50. Each of the Named Plaintiffs support the Settlement and have submitted declarations attesting to the work they have done on this matter.

51. Attached as Exhibit 2 is the Declaration of Karl Kendall in Support of the Settlement.

52. Attached as Exhibit 3 is the Declaration of Suzanne Rainey in Support of the Settlement.

53. Attached as Exhibit 4 is the Declaration of Vincenzo Pernice in Support of the Settlement.

***Authority Supporting Appropriateness of Class Certification***

54. Having litigated almost exclusively ERISA breach of fiduciary duty actions over my career, it is my experience that the types of claims asserted in this action are typically certified.

55. Attached hereto as Exhibit 5 is a non-exhaustive list of more than seventy-five decisions from around the country in which courts certified classes in ERISA breach of fiduciary duty actions, like the instant action, including several decisions certifying classes in "excessive fee" suits.

I declare, pursuant to 28 U.S.C. §1746 and under penalty of perjury, that the foregoing is true and correct to the best of my knowledge, information and belief.

Executed this 31st day of March, 2022, in Merion Station, Pennsylvania.

CAPOZZI ADLER, P.C.

*/s/ Mark K. Gyandoh*
Mark K. Gyandoh, Esquire

*Proposed Class Counsel*