IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION

| | |
|---|---|
| KARL KENDALL, SUZANNE RAINEY and VINCENZO PERNICE, individually and on behalf of those similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>PHARMACEUTICAL PRODUCT DEVELOPMENT, LLC, BOARD OF DIRECTORS OF PHARMACEUTICAL PRODUCT DEVELOPMENT, LLC, THE BENEFITS ADMINISTRATIVE COMMITTEE, and JOHN DOES 1-30.<br><br>Defendants. | Civil Action No. 7:20-cv-00071-D |

**DECLARATION OF MARK K. GYANDOH IN SUPPORT OF PLAINTIFFS' MOTIONS FOR FINAL APPROVAL OF SETTLEMENT, AND FOR AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES, AND FOR CASE CONTRIBUTION <u>AWARDS TO THE NAMED PLAINTIFFS</u>**

I, Mark K. Gyandoh, Esquire, as Class Counsel, declare as follows:

1. I am a member in good standing of the bars of the Commonwealth of Pennsylvania and state of New Jersey and have personal knowledge of the facts set forth below and, if called as a witness, I could and would testify competently thereto.

2. I am a partner and chair of the Fiduciary Practice Group at Capozzi Adler, P.C. ("Capozzi Adler"), and I submit this Declaration in support of Plaintiffs' Motion for Final Approval of Settlement and In Support of Motion for An Award of Attorneys' Fees, Reimbursement of Expenses and Case Contribution Awards for The Named Plaintiffs.

*Class Counsel's Experience*

1

3.	I received both my J.D. (2001) and LLM in trial advocacy (2011) from Temple University School of Law.  While at Temple, I was the research editor for the Temple International and Comparative Law Journal.  After law school I clerked for a year with a Judge on the New Jersey State Appellate Court.

4.	I have been litigating ERISA (the Employee Retirement Income Security Act of 1974) fiduciary breach lawsuits for 17 years, first at my prior firm of Kessler Topaz Meltzer & Check, LLP (KTMC), and currently at Capozzi Adler where, as noted above, I am chair of the Fiduciary Practice Group.  Over my career I have been actively involved in many high-profile ERISA class actions.  For example, I was one of the lead attorneys for plaintiffs in *Fifth Third Bancorp, et al., v. Dudenhoeffer, et al.*, 573 U.S. 409, 134 S. Ct. 2459 (2014), a seminal Supreme Court decision that clarified the unwavering duties owed by fiduciaries to pension plan participants.  *See* biography at https://capozziadler.com/mark-k-gyandoh-esquire/.

5.	My partner Donald Reavey who chairs the firm's Litigation Practice Group is an experienced litigator frequently handling multi-million dollar disputes.  A 1998 graduate of Penn State, Dickinson School of Law, Mr. Reavey has leaned on his two-decade plus litigation experience in filing and litigating dozens of ERISA breach of fiduciary duty actions over the last several years.  *See* biography at https://capozziadler.com/donald-r-reavey-esquire/.

6.	Other members of the Fiduciary Practice Group include Mid-Level Associate, Gabrielle P. Kelerchian, a 2017 graduate of Villanova Law School with several years of litigation experience.  *See* biography at https://capozziadler.com/gabrielle-p-kelerchian-esquire/.  Before joining Capozzi Adler, Ms. Kelerchian zealously represented individuals in medical malpractice and personal injury cases at Philadelphia area law firms.  Rounding out the ERISA team are our support staff which include paralegals and other paraprofessionals who assist in the practice.

7. I and my firm have been lead or co-lead interim counsel in dozens of ERISA breach of fiduciary duty actions. Recently, Capozzi Adler was appointed interim co-lead class counsel in *Tracy et al. v. The American National Red Cross*, No. 1:21-cv-00541-EGS (D.D.C. Apr. 16, 2021) an ERISA class action analogous to the instant Action. Capozzi Adler was also appointed co-lead class counsel in *Boley, et al. v. Universal Health Services, Inc., et al.* 2021 WL 859399 (E.D.Pa. Mar. 8, 2021). Additionally, Capozzi Adler has been appointed interim lead or co-lead class counsel in several analogous ERISA breach of fiduciary duty matters. *See, e.g., Bilello, et al., v. Estee Lauder, Inc., et al.*, No. 1:20-cv-04770-JMF (S.D.N.Y. Aug. 10, 2020) (Doc. 11.) (appointing Capozzi Adler interim lead class counsel); *Covington et al. v. Biogen Inc. et al.*, No. 1:20-cv-11325 (D. Mass. Oct. 6, 2020 (Doc. 24) (appointing Capozzi Adler interim Co-Lead Class Counsel); *Tepper et al. v. Omnicom Group et al.*, No. 20-cv-4141 (S.D.N.Y. Sept. 17, 2020) (Doc. 13) (same); *Johnson et al. v. Quest Diagnostics et al.*, No. 2:20cv07936 (D.N.J. Oct. 2, 2020) (Doc. 7) (same).

8. Of particular importance here, while I was counsel at KTMC and in my current position, in the course of prosecuting ERISA class actions such as this, I have supervised the preparation of numerous consolidated pleadings, responses to motions to dismiss, drafting of discovery requests and review of hundreds of thousands of pages of plan-related documents and related documentation, and litigated cases through the summary judgment and trial phases.

9. The firm strives to obtain the best results for class members in every circumstance. We have successfully defeated motions to dismiss similar allegations in numerous actions. *See, e.g., Davis v. Magna Int'l of America, Inc.*, 2021 WL 1212579 (E.D. Mich. March 31, 2021) (upholding allegations that plan fiduciaries selected higher-priced identical share classes and overpaid for recordkeeping); *Jones v. Coca-Cola Consolidated, Inc.*, No. 3:20-cv-00654-FDW-

DSC (ECF No. 25) (W.D.N.C. March 31, 2021) (same); *McCool v. AHS Management Company, Inc.*, 2021 WL 826756 (M.D. Tenn. March 4, 2021) (same); *Parmer, et al. v. Land O'Lakes, Inc., et al.*, 2021 WL 464382 (D. Minn. Feb 9, 2021) (same); *In re Medstar ERISA Litig.*, 2021 WL 391701 (D. Md. Feb. 4, 2021) (same); *Silva v. Evonik Corp.* slip op. (D.N.J. Dec. 30, 2020) (same); *Pinnell, et al. v. Teva Pharmaceuticals USA, Inc., et al.*, 2020 WL 1531870 (E.D.Pa. Mar. 31, 2020).

10. We have also been successful at the appellate level resulting in the reversal and remand of wrongly dismissed actions. *See, e.g., Kong et al. v. Trader Joe's Co.,* No. 20-56415 (9th Cir. Apr. 15, 2022) (reversing district court dismissal of ERISA excessive fee action); *Davis et al. v. Salesforce.com. Inc. et al.*, No. 21-15867 (9th Cur. Apr. 8, 2022) (same). Conversely, we have successfully obtained affirmance of correctly decided cases. *See, e.g., Hawkins et al. v. Cintas Corp.*, No. 21-3156 (6th Cir. Apr. 27, 2022) (upholding denial of motion to compel arbitration in ERISA case).

11. My firm has also engaged in successful settlement negotiations and mediations in ERISA actions, recovering millions of dollars for its clients and class members. *See, e.g., Buescher, et al., v. Brenntag North America, Inc., et al.*, No. 5:20-cv-00147 (E.D. Pa. 2020) (recovered $2,300,000.00 class settlement); *Pinnell, et al., v. Teva Pharmaceuticals USA, Inc., et al.*, No. 2:19-cv-05738-MAK (E.D. Pa. 2019) (settlement in the amount of $2,550,000.00 after successful mediation); *Freck v. Cerner Corp., et al.*, No. 4:20-CV-00043-BCW (W.D. Mo. 2020) (recovered $4,050,000.00 class settlement); *Gerken, et al. v. ManTech Int'l Corp, et al.*, No. 1:20-cv-01536 (E.D. Va. 2020) (recovered $1,200,000.00 class settlement).

12. Capozzi Adler also has the resources and commitment to deploy those resources on behalf of the proposed class in this case and has in fact done so as evidenced by our litigation

4

efforts to date, including conducting discovery and attending mediation. With three office locations, the firm has been successfully serving clients for over 23 years offering a full range of legal services.

13. Given my years of experience in this field of law, including, trying an analogous case to an unfavorable verdict for plaintiffs in *Brieger v. Tellabs, Inc.*, 659 F. Supp. 2d 967 (N.D. Ill. 2009), I believe the settlement achieved in this case is adequate and certainly reasonable and fair.

### *Procedural History*

14. Following several months of investigation, including engaging consulting experts and researching and analyzing relevant case law to determine potential legal claims, Plaintiffs Karl Kendall, Suzanne Rainey, and Vincenzo Pernice, participants in the Pharmaceutical Product Development, LLC Retirement Savings Plan (the "Plan"), filed a Class Action Complaint ("Complaint") on April 15, 2020 (ECF No. 1) against three categories of Defendants: (1) Pharmaceutical Product Development, LLC ("PPD"); (2) the Board of Directors of Pharmaceutical Product Development its members (the "Board"); and (3) The Benefits Administrative Committee and its members (the "Committee"). Plaintiffs alleged, *inter alia*, that throughout the putative Class Period (April 15, 2014 through the date of judgment), Defendants selected a slate of investment options for the Plan that were imprudent due to their high fees where identical funds – differing only in price – were available in the marketplace. Plaintiffs alleged had there been a prudent process in place, the majority of these funds would have been replaced with the identical less expensive alternatives as early as the beginning of the Class Period.

15. In addition to the aforementioned claims, Plaintiffs alleged the Plan suffered millions of dollars in damages due to unreasonably high recordkeeping fees that ranged from $85

5

to $107 per participant annually from 2014 to 2019 when a reasonable amount should have been no more than $35 per participant. Discovery revealed a genuine dispute as to how much the Plan was paying for recordkeeping and administration fees.

16. Plaintiffs' claims fell under four main theories of liability. The first two theories were that, during the Class Period, Defendants failed to utilize the lower fee share classes that were identical in all ways except price to the funds already in the Plan (Cmplt. at ¶¶ 84-93) and failed to investigate the availability of lower cost collective trusts and separate accounts (Cmplt. at ¶¶ 94-104).

17. The third theory was that Defendants failed to select available lower cost passively and actively managed funds (Cmplt. at ¶¶ 105-112). Finally, the fourth theory of liability was that Defendants failed to monitor or control the Plan's recordkeeping expenses (Cmplt. at ¶¶ 113-131).

18. On July 31, 2020, Defendants filed their Motion to Dismiss Pursuant to Rules 12(b)(1) and 12(b)(6) (ECF No. 19).

19. On August 21, 2020, Plaintiffs filed their Brief In Opposition to Defendants' Motion to Dismiss the Complaint (ECF No. 21).

20. On September 4, 2020, Defendants filed a Reply In Support of their Motion to Dismiss (ECF No. 22). Then on March 31, 2021, the Court entered an Order granting in part and denying in part the motion to dismiss (ECF No. 28). The Court allowed Plaintiffs to proceed with their allegations that Defendants should have invested in the lowest cost share class available due to the Plan's size. The Court also allowed Plaintiffs to proceed with their allegations that Plan participants were charged excessive recordkeeping fees. Of note, Defendants used revenue sharing from the higher-cost share classes of Plan funds to pay for the Plan's recordkeeping. Accordingly, the lower cost share class claims and recordkeeping claims overlap.

21. The Court also permitted Plaintiffs to proceed with Count II, alleging certain Defendants failed to adequately monitor their delegates.

22. The Court dismissed Plaintiffs' claims: (1) that the Committee failed to investigate the availability of lower cost collective investment trusts or separate account options, and (2) that Defendants failed to investigate the availability of passively-managed lower cost funds. The Court also dismissed Plaintiffs' claims for breach of the duty of loyalty and injunctive relief.

23. Defendants filed their Answer and Affirmative Defenses on April 14, 2021 (ECF No. 29).

24. On May 28, 2021, the Parties filed a Rule 26(f) Report (ECF No. 31).

25. The Court entered a Pretrial Scheduling Order on July 7, 2021 (ECF No. 31).

26. On November 29, 2021, the Parties filed a Joint Motion to Stay All Deadlines to permit the Parties to pursue settlement negotiations (ECF No. 38).

27. The Court entered an Order granting the motion to stay on December 1, 2021 (ECF No. 40).

28. On January 31, 2022, the Parties filed a Notice of Settlement advising the Court of the settlement (ECF No. 41).

***Discovery Practice***

29. On January 14 2020, prior to filing suit, Plaintiffs requested numerous documents and information from Defendants pursuant to Section 104(b)(4) of ERISA.

30. In response to Plaintiffs' request, Defendants produced numerous responsive documents.

31. On June 30, 2021, Defendants served their First Set of Interrogatories and First Set of Requests for Production to all Plaintiffs. Plaintiffs served responses to Defendants' requests on August 6, 2021.

32. On June 8, 2021, Plaintiffs served their First Request for Production of Documents Directed to All Defendants. Defendants served responses to Plaintiffs' requests on July 8, 2021.

33. Defendants have produced over 9,100 pages of core documents, including Plan documents, summary plan descriptions, participant investment disclosures, committee charters, investment policy statements, trust and recordkeeping agreements, fee schedules, committee meeting minutes and materials, and account statements.

*Settlement Negotiations*

34. On January 26, 2022, the Parties participated in a mediation before David Geronemus, Esquire, a neutral, third-party private mediator with experience mediating ERISA class actions.

35. Plaintiffs' counsel submitted extensive mediation statements and Plaintiffs' counsel personally and meaningfully participated in the mediation.

36. After the Court's motion to dismiss order, the only claims remaining in the Action under Count I of the Complaint were claims related to the alleged failure of Defendants to use the lowest share classes available and failure to monitor or control the Plan's recordkeeping expenses and Count II related to the failure of Defendants to adequately monitor other fiduciaries.

37. Reviewing all of the relevant information, Plaintiffs determined maximum potential damages to the Plan to be no more than $2.5 million before calculation of prejudgment interest. This damages amount assumes all revenue derived from funds selected by Plan participants, including revenue placed in the Plan Expense Reimbursement Account (PERA) to be used by the

Plan to pay direct and necessary expenses of the Plan, should have been considered fees for recordkeeping and administrative costs, and a reasonable per participant annual fee should have been $35 per participant.

38. Defendants disagreed with Plaintiffs' methodology for calculating damages because, among other things, they argue the revenue Plaintiffs alleged was received by the Plan's recordkeeper far exceeded the Plan's contractually agreed rates with its recordkeeper. That is because, as they assert, a significant portion of the revenue Plaintiffs alleged was received by the Plan's recordkeeper went into the PERA account and not to the Plan's recordkeeper.

39. Following a full day of mediation under the auspices of David Geronemus, Esquire, the parties arrived at a settlement in principle, settling this matter for $775,000.00. This amount represents 31% of Plaintiffs' best-case damages scenario. Several weeks of negotiations followed to finalize the terms of the Settlement Agreement. That Settlement Agreement, inclusive of exhibits, was finalized and executed on March 30, 2022. It is attached here as Exhibit 1.

40. PPD is a large company with enough assets to pay the Settlement.

41. Plaintiffs did not discount the amount of the Settlement based on Defendants' ability to pay.

### *The Settlement Terms*

42. The Settlement provides PPD (or its insurance carrier) will pay $775,000.00 – the Gross Settlement Amount – to be allocated to participants on a pro-rata basis pursuant to the proposed Plan of Allocation (*see* Exhibit B to Settlement Agreement) in exchange for releases and dismissal of this action (described in Article 7 of the Settlement Agreement).

9

43. The Gross Settlement Fund will be used to pay the participants' recoveries, administrative expenses to facilitate the Settlement, and Plaintiffs' counsel's attorneys' fees and costs, and Class Representatives' Compensation if awarded by the Court.

44. The Class Members include all individuals in the Settlement Class, or:

> all persons who participated in the Plan at any time during the Class Period, including any Beneficiary of a deceased Person who participated in the Plan at any time during the Class Period, and any Alternate Payee of a Person subject to a QDRO who participated in the Plan at any time during the Class Period. Excluded from the Settlement Class are Defendants and their Beneficiaries.

*See* Settlement Agreement, Section 1.45. Class Period means the period from April 15, 2014 through the date of the Preliminary Approval Order, which was April 18, 2022. *Id*., Section 1.13.

45. A portion of the funds from the Net Settlement Amount will be allocated to each Class Member in proportion to the sum of that Class Member's Balance as compared to the sum of the Balance for all Class Members. *See* Plan of Allocation at II.C. Class Members who are entitled to a distribution of less than the minimum amount of $10.00 will receive $10.00, the De Minimis amount, from the Net Settlement Amount. *Id.* at II.D. For Class Members with an Active Account (an account with a positive balance) as of the date of the Final Order, each Class Member's Final Entitlement Amount will be allocated into their Plan account. *Id.* at II.E. Former Participants shall be paid directly by the Settlement Administrator by check. *Id*. at II.F.

### *Effectuation of Notice*

46. The Court approved Class Counsel's selection of Angeion Group ("Angeion") as settlement and notice administrator and duly appointed Angeion as the Settlement Administrator. *See* Preliminary Approval Order, ¶ 8.

47. Angeion has submitted a declaration testifying to their efforts regarding sending notice to the Settlement Class. *See* Declaration of Marham Sherwood Regarding (A)

Implementation of Notice Plan; and (B) Report of Class Member Objections. (attached as Exhibit 2) at ¶ 13.

48. In between May 19, 2022 and June 8, 2022, Angeion was provided at total of ten (10) files, comprised of 26,639 current and former participant records. Sherwood Decl., ¶ 4. Angeion updated the Settlement Class member address information using data from the National Change of Address ("NCOA") database and analyzed the raw data to consolidate records within each file. Sherwood Decl., ¶¶ 7-9. On June 17, 2022, Angeion mailed the Class Notice via U.S. Postal Service first-class mail to 26,639 potential Settlement Class members. Sherwood Decl., ¶ 10. Two-hundred and forty-five (245) Notices were returned and resent after and updated address was located. Sherwood Decl., ¶ 11.

49. Additionally, Angeion emailed the Class Notice to 14,915 Class Members for whom email addresses had been provided. Sherwood Decl., ¶ 6. In all, the notice program was extremely successful. Only 852 emails were undeliverable. Of the Class Notices mailed, only 852 remained undeliverable as of July 25, 2022.

50. The notice program apprised Settlement Class members of the terms of the Settlement and of their right to object to any or all of the terms of the Settlement, Plan of Allocation, Case Contribution Awards, or to Class Counsel's motion for award of attorneys' fees and reimbursement of litigation expenses. The Class Notice was also posted on a dedicated website – www.ppderisaSettlement.com – through which the public and the Plan's current and former participants could view copies of important case documents, including the Settlement Agreement with Exhibits, and the date and time of the Fairness Hearing. *See* Sherwood Decl., ¶ 13. As of July 25, 2022, the Settlement website has tracked 838 visitors and 1,924 hits to the website. *See* Sherwood Decl., ¶ 13.

### *Class Counsel's Requested Fee and Expense Awards is Fair and Reasonable*

51. As detailed in the accompanying Fee Memorandum, Class Counsel believes that Class Counsel's request for attorneys' fees readily meets the standards set forth in *In re The Mills Corp. Sec Litig.*, 265 F.R.D. 246, 261 (E.D. Va. 2009) (citing *In re Cendant Corp. Litig.*, 264 F.3d 201, 220, 282-83 (3d Cir. 2001)), and merits the Court's approval.

52. This was a vigorously prosecuted case which involved considerable time and resources investigating the action, reviewing and analyzing documents produced through informal discovery, and negotiating an excellent result for the Settlement Class at mediation.

53. Class Counsel undertook this action aware of the possibility they could be left uncompensated for their time and out-of-pocket expenses.

54. The recovery of $775,000.00 in this case was achieved through the skill, work, dedication, and effective advocacy of Class Counsel who leaned on their decades of experience with complex ERISA class action litigation of this type.

55. As payment for services rendered in achieving such a result, Class Counsel seek an award of attorneys' fees in the amount of $258,307.50 plus reimbursement of expenses reasonably incurred by Class Counsel. Class Counsel's efforts since the inception of this case has been without compensation of any kind and their fee has been wholly contingent upon the result achieved.

56. In this action, attorneys' fees equaling thirty-three and one third (33 1/3%) percent of the Settlement Fund results in a fair and reasonable fee, especially given that the monetary result provides a benefit to the Settlement Class, and society has as interest that the wrongdoing alleged is prevented in the future.

57. As lead Plaintiffs' attorney, I personally managed, delegated, and supervised the allocation of personnel and expenses employed by my firm in this case. We have aggressively, efficiently, and vigorously prosecuted this case and represented the best interest of the Plaintiffs and the participants and beneficiaries of the Plan. Over the course of the litigation, we have incurred the following expenses:

| Expense Category | Amount |
|---|---|
| PACER | $ 14.20 |
| Westlaw Research | $ 312.18 |
| Courier/Fed Ex | $ 429.99 |
| Telephone Conferencing | $ 158.30 |
| E-Discovery | $1,830.85 |
| Court Costs (filing fees) | $ 1,000.00 |
| Travel and accommodation for Fairness Hearing | $1,200 |
| Mediator | $ 12,400.00 |
| Expert | $5,000.00 |
| **Total** | **$22,344.52** |

58. The expenses listed above were actually incurred in the litigation of this case as reflected in the books and records of Capozzi Adler. These books and records are prepared from receipts, expense vouchers, check records, and other documents and are an accurate record of the expenses. These expenses were necessary to the prosecution and settlement of the case, and are of the type that would be billed to hourly clients of the firm.

59. The firm's hours and lodestar devoted to this matter, as of July 22, 2022, are as follows:

| Name | Position | Hourly Rate | Hours | Lodestar |
|---|---|---|---|---|
| Mark K. Gyandoh | Partner | $885 | 156 | $138,060.00 |
| Donald R. Reavey | Partner | $885 | 86.5 | $76,552.50 |
| Gabrielle P. Kelerchian | Jr. Associate | $550 | 62.4 | $34,320.00 |
| Linda Gussler | Paralegal | $350 | 38.7 | $13,545.00 |
| Lauren Phillips | Paralegal | $335 | 28 | $9,380.00 |
| Hugh Murchie | Summer Legal Intern | $250 | 19.1 | $4,275.00 |

| Christeena Joy | Professional Staff | $250 | 10 | $2,500.00 |
| Kendall Adams | Professional Staff | $250 | 1.3 | $325.00 |
| Kathleen Hughes | Professional Staff | $250 | 3.4 | $850.00 |
| **Totals** | | | **405.4** | **$279,807.50** |

60. The above table is based on my firm's contemporaneous time records, and breaks out the hours and rates for each attorney, paralegal and professional staff.

61. Details and material supporting the time records and expenses referenced in this declaration are available upon the request of the Court.

62. I reviewed the time printouts to confirm both the accuracy of the entries on the printouts as well as the necessity for and reasonableness of the time commitment to the litigation. Based on this review, I believe the time reflected in my firm's lodestar calculation is reasonable in amount and was necessary for the effective and efficient prosecution and resolution of the litigation. Capozzi Adler litigated this case on a wholly contingent basis and the hourly rates shown for the attorneys and paraprofessionals at my firm are the current hourly rates for contingent matters. These rates are in line with those charged by other firms in the field of nationwide ERISA class action work and have been approved by courts in numerous cases. Moreover, the rates are reasonable in comparison to the firms that defend nationwide ERISA class action cases.

63. In total, Class Counsel has spent 405.4 hours on this case with a corresponding lodestar of $ 279,807.50. Meaning Class Counsel's combined multiplier in this action is less than 1.0 or .92, well within the range approved in other matters as addressed in the Fee Memorandum.

64. The time entries above do not include future time that will be spent on this case to communicate with class members and monitor Defendants' compliance with the Settlement, among other things. It also does not include time that will be spent on preparation for and the

interview with the Independent Fiduciary with respect to its review of the Settlement, or preparation for and attendance at the Fairness Hearing.

65. Without the Action, it is highly unlikely that individual claimants would have had the resources to pursue claims of this magnitude. Protecting the retirement funds of employees, and obtaining recompense when those funds are mismanaged, is in the public interest and supports the fee award sought.

66. As discussed in the accompanying Plaintiffs' Memorandum of Law in Support of Motion for Final Approval of Settlement Agreement and Fee memorandum, as a result of diligent efforts and their skill and expertise, Class Counsel were able to negotiate an excellent Settlement for the Settlement Class.

### *Capozzi Adler's Hourly Rates Compare Favorably to Their Peers*

67. For its contingency practice, Capozzi Adler charges partner rates of $885 per hour; mid-level associate rates of $550 per hour; and paralegal and professional staff rates that range from $335 to $350 per hour. More junior support staff are billed at $250 per hour. These hourly rates are commensurate with the firm's degree of skill, experience, and reputation. Each member of Capozzi Adler's Fiduciary Practice Group has the requisite experience, as described above, to command their hourly rates.

68. In the course of my 17-year nationwide ERISA practice, I have worked with most if not all firms that have a national ERISA class action practice. In my experience, while there are invariably differences in rates between different firms – and even between rates for lawyers within the same firm with the same number of years of practice – Capozzi Adler's rates are broadly in line with rates of other firms with nationwide class action practices, that have been the basis for awards of fees in courts around the country.

15

69.     Four of these firms that I have worked for, or with, in the past recently filed declarations in support of a fee petition in *Beach, et al. v. JPMorgan Chase Bank, N.A. et al.*, No. 1:17-cv-00563 (S.D.N.Y.). Like this Action, *Beach* involved allegations that JPMorgan Chase breached its fiduciary duties under ERISA to participants in the JPMorgan Chase retirement plan. *Id.* Plaintiffs' counsel's declarations demonstrate attorneys and staff in their offices charge similar rates as Capozzi Adler.

70.     My former firm KTMC, a Pennsylvania based firm like Capozzi Adler, charges partner rates that range from $700 to $920; associate rates that range from $400 to $505; paralegal rates that range from $250 to $275; and professional staff rates of $250. *See* Exhibit 6 (Excerpts of KTMC declaration).

71.     Nichols Kaster, PLLP, a Minnesota-based firm with a national ERISA practice, charges partner rates that range from $775 to $875; associate rates that range from $425 to $575; paralegal and professional staff rates of $250. *See* Exhibit 7 (Excerpts of Nichols Kaster declaration).

72.     Keller Rohrback L.L.P., a Washington State-based firm with a national ERISA practice, charges partner rates that range from $765 to $1,035; associate rates that range from $400 to $650; and professional staff rates that range from $225 to $325. *See* Exhibit 8 (Excerpts of Keller Rohrback declaration)

73.     Robbins Geller Rudman & Dowd LLP, with an office in the state of New York and a national ERISA practice, charges partner rates that range from $760 to $1,325; associate rates that range from $460 to $575; paralegal rates that range from $275 to $350; and professional staff rates that range from $290 to $295. *See* Exhibit 9 (Excerpts of Robbins Geller declaration).

74. Additionally, Capozzi Adler's rates generally compare favorably to the large, sophisticated firms that typically represent defendants in ERISA class actions.

75. The Valeo Report, a report that collected and summarized hourly rates across various firms, shows that among ERISA practice groups within the top 200 law firms in the defense bar, the 2017 hourly rate range for senior partners was $320-$1,363 (with an average of $835), for partners was $296-$1,202 (with an average of $751), and for senior associates was $238-$938 (with an average of $580). *See* Exhibit 10 (Excerpts of Valeo Report).

76. Finally, Capozzi Adler's rates have been implicitly approved by numerous courts while granting requests for fees. *See, e.g., Diaz v. BTG Int'l, Inc.*, No. 19-cv-1664-JMY, 2021 WL 2414580 (E.D. Pa. June 14, 2021); *Pinnell v. Teva Pharmaceuticals USA, Inc.*, No. 2:19-cv-05738-MAK (ECF No. 93) (E.D. Pa. June 11, 2021); *Gerken et al. v. Mantech Int'l.*. No. 1:20-cv-01356-TSE (ECF No. 41) (E.D. Va. May 21, 2021); *Harding et al. v. Southcoast Hosp. Group et al.*, No. 1:20-cv-12216-LTS (ECF. No. 51) (D. Mass. April 25, 2022).

### *Case Contribution Awards Sought for the Plaintiffs Are Reasonable*

77. Plaintiffs seek an award of $10,000 for each of the four Class Representatives for their contributions to the prosecution and Settlement of the Action. Any such awards will be paid from the Settlement Fund.

78. Each of the Plaintiffs was instrumental in seeking relief on behalf of the Plan and they each have been actively involved in the litigation. These individuals took time away from other obligations in order to fulfill their obligations to the Settlement Class by: (1) engaging counsel, reviewing the Complaint and agreeing to publicly serve as Named Plaintiffs; (2) staying informed of the case and making themselves available at all times to discuss the litigation; (3) providing information and documents; (4) participating in teleconferences concerning the Action;

and (5) and reviewing, considering, and ultimately approving the proposed Settlement for presentation to the Court.

79. Attached hereto as Exhibit 3 is Plaintiff Kendall's declaration in support of his application for a case contribution award. Plaintiff Rainey's declaration is attached as Exhibit 4. Plaintiff Pernice's declaration is attached as Exhibit 5.

80. As discussed in the accompanying Fee Memorandum, the requested case contribution awards are supported by ample legal authority in similar cases.

81. Further, to date, no objection to the Case Contribution Awards request has been raised. We will advise the Court if any objection is received subsequent to the date of the objection deadline.

I declare, pursuant to 28 U.S.C. §1746 and under penalty of perjury, that the foregoing is true and correct to the best of my knowledge, information and belief.

Executed this 26th day of July, 2022, in Merion Station, Pennsylvania.

**CAPOZZI ADLER, P.C.**

*/s/ Mark K. Gyandoh*
Mark K. Gyandoh, Esquire

***Proposed Class Counsel***